**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| MARKUS JAHR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 00-02423 (EGS) |
| | ) |
| THE DISTRICT OF COLUMBIA, | ) |
| | ) |
| Defendant. | ) |

---

## MEMORANDUM OPINION

In October 2000 Plaintiffs Robert Aronson and Markus Jahr
first brought this action alleging racial discrimination in
violation of Title VII of the Civil Rights Act of 1964 ("Title
VII"), 42 U.S.C. § 2000e *et seq.*, against defendant the District
of Columbia.  On December 26, 2001, upon consideration of
Plaintiffs' request that they be allowed to exhaust their
administrative remedies in their pending appeals to the District
of Columbia Office of Employee Appeals before continuing with
this litigation, this Court dismissed the Complaint without
prejudice to the subsequent filing of a motion to reinstate
following disposition of Plaintiffs' appeals.  On December 10,
2012, Plaintiff Markus Jahr filed a motion to reinstate the case,
which is now ripe for determination.  Upon consideration of
Plaintiff's motion, the District's Opposition and reply thereto,

the applicable law, the case record, and for the reasons set
forth below, Mr. Jahr's motion to reinstate is **DENIED**.

**I.     BACKGROUND**

**A.   Factual Background**

Markus Jahr and Robert Aronson were employed by the
District of Columbia Fire and Emergency Services Department
("the Department") as paramedics assigned to an Advanced Life
Support ambulance, and were responsible for providing emergency
medical care to injured persons in the District of Columbia.
*Jahr v. Dist. of Columbia Office of Employee Appeals*, 19 A.3d
334, 336 (D.C. 2011) ("*Jahr IV*.  On the afternoon of January 1,
1999, Mr. Jahr and Mr. Aronson were dispatched to 800 Nicholson
Street, NE to respond to a motor vehicle accident involving a
trapped victim.  *Id*.  After transporting the accident victim to
Washington Hospital Center ("WHC"), they were required by
Department policy to return to their quarters by the most direct
route.  *Id*.  Instead, Mr. Aronson told Mr. Jahr that he needed
to fill a personal prescription at a pharmacy, and they took the
ambulance to a Target Store located at the Potomac Yards
Shopping Center in Alexandria, Virginia.  *Id.*

The ambulance was seen in the shopping center parking lot
by a former employee, who reported the ambulance's location to
Lieutenant John Clayton at the Department's Communications
Division.  *Jahr v. DC Fire & Emergency Medical Services*

*Department*, OEA Matter No. 1601-0180-99 at 4 (May 29, 2003)
("*Jahr I*"). Upon learning this information, the EMS Shift
Supervisor on duty, Captain Jerome Stark, contacted WHC staff
via telephone to verify the ambulance's location, and sent a
Lieutenant to the hospital to confirm the location, who searched
for but could not locate the ambulance at the hospital. *Id.* at
5.

Sixteen minutes after the ambulance was seen in Virginia,
Mr. Jahr called the Communications Division and asked for more
time to retrieve the ambulance's clipboard, which he claimed had
been left behind at WHC. *Id.* When asked his current location,
Mr. Jahr said they "were in front of the Washington Hospital
Center." *Id.* at 9. Even after the operator told Mr. Jahr that
the ambulance was not at WHC and that a lieutenant was at WHC
looking for the ambulance, Mr. Jahr continued to insist that the
unit was there. *Id.* Mr. Jahr later admitted that he was in
Alexandria running a personal errand with Mr. Aronson at the
time the ambulance was seen at Potomac Yards. *Id.*

After the Department learned of Mr. Jahr and Mr. Aronson's
conduct, their Platoon Chief Supervisor, Captain Jerry Stack,
recommended that they be suspended without pay for a period not
exceeding twenty days. Compl. ¶ 8. However, Deputy Fire Chief
Lillian Carter and the Department's Medical Director, Dr. Wayne

E. Moore, recommended that Mr. Jahr and Mr. Aronson be terminated from employment. *Id.* ¶ 10.

The Department issued a notice of proposal to terminate Mr. Jahr from his position on January 14, 1999, which listed the charges as dishonesty and inefficiency. *Id.* ¶ 12. On February 12, 1999, during an informal hearing on the merits of the allegations against Mr. Jahr and Mr. Aronson, Assistant Fire Chief Floyd Madison recommended that the adverse actions against them be withdrawn without prejudice to enable the Department to institute new adverse actions. *Id.* ¶ 13. The notice was withdrawn and subsequently reinstated on February 16, 1999 listing charges of dishonesty and inexcusable neglect of duty. *Id.* ¶ 15. The final Department decision to terminate Mr. Jahr was issued on April 5, 1999, and he was removed on May 8, 1999.[1] *Id.* ¶ 8.

**B. Procedural History**

On May 28, 1999, Mr. Jahr filed a petition for appeal from the Department's notice of his termination in the District of Columbia Office of Employee Appeals ("OEA"). *Jahr I*, OEA Matter 1601-0180-99, at 1. In his appeal Mr. Jahr argued, *inter alia*, that the penalty of removal for his conduct was disparate in comparison to the penalties given to other employees who were

---

[1] This was Mr. Jahr's second violation involving dishonesty. He was previously suspended for fifteen days for falsification of material facts. *Jahr*, 19 A.3d at 337 n.3.

4

found guilty of committing similar, identical, or more severe misconduct. *Id.* at 13.

On October 10, 2000, while Mr. Jahr's OEA action was still pending, Mr. Jahr and Mr. Aronson filed a complaint in this Court seeking monetary damages and equitable relief from the District of Columbia on the grounds that their termination was a result of disparate treatment in violation of Title VII of the Civil Rights Act of 1964. Compl. at 1. Specifically, they alleged that the Department's decisions to ignore the recommendation of their superior officer that they be suspended without pay, institute an adverse action after the dismissal of an initial proceeding, and "impose a sanction disproportionate to the discipline the Department had previously imposed . . . upon African-American employees guilty of similar misconduct" were "the discriminatory results of the racial bias of its African-American officials against its Caucasian employees." Compl. ¶ 19. On December 26, 2001, this Court dismissed the Complaint without prejudice to allow Mr. Jahr and Mr. Aronson to exhaust their administrative remedies in their pending appeals to the OEA. Order to Dismiss at 1, ECF No. 13.

On October 31, 2002 a hearing was held before an Administrative Law Judge ("ALJ") regarding Mr. Jahr's OEA appeal. *Jahr I*, OEA Matter No. 1601-0180-99 at 3. In an initial decision issued on May 29, 2003, the ALJ concluded that Mr. Jahr

had failed to show that he was treated differently than other similarly situated employees. *Id.* at 13-15. In further appeals, the ALJ's decision was subsequently upheld by the full OEA Board and the D.C. Superior Court. *Jahr*, 19 A.3d at 336. Finally, Mr. Jahr appealed to the District of Columbia Court of Appeals, and was again denied the relief he sought. In 2011, the Court of Appeals affirmed the OEA's decision, including the OEA's finding that Mr. Jahr was not subject to disparate treatment in the imposition of his penalty. *Jahr*, 19 A.3d at 338.

On December 10, 2012, Mr. Jahr filed a motion to reinstate the case that was dismissed by this Court on December 26, 2001. Mot. to Reinstate at 1, ECF No. 15.

## II. STANDARD OF REVIEW

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, [also known as collateral estoppel,] which are collectively referred to as res judicata." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (internal quotation marks omitted). Under collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *U.S. Postal Serv. v. Am. Postal Workers Union,* 553 F.3d 686, 696 (D.C. Cir. 2009) (quoting *Novak v. World Bank,* 703 F.2d 1305, 1309 (D.C. Cir. 1983)). By precluding parties from contesting

matters they have already had a full and fair opportunity to
litigate, collateral estoppel "conserve[s] judicial resources,
avoid[s] inconsistent results, engender[s] respect for judgments
of predictable and certain effect, and [] prevent[s] serial
forum-shopping and piecemeal litigation." *McGee v. District of
Columbia,* 646 F. Supp. 2d 115, 123 (D.D.C. 2009) (internal
quotation marks omitted).

Courts apply the preclusion law of the court in which the
first proceeding was brought, and when this is a state court,
the state's law of preclusion applies. *Kremer v. Chem. Const.
Corp.,* 456 U.S. 461 at 481-482 (1982); *cf. Youngin's Auto Body v.
Dist. of Columbia*, 775 F. Supp. 2d 1, 5-6 (D.D.C. 2011). Under
District of Columbia law, collateral estoppel "prohibits 'the
relitigation of factual or legal issues decided in a previous
proceeding and essential to the prior judgment." *Franco v. Dist.
of Columbia*, 3 A.3d 300, 303-04 (D.C. 2010) (quoting *Elwell v.
Elwell*, 947 A.2d 1136, 1140 (D.C. 2008)). The Supreme Court has
held that a "state administrative decision in the employment-
discrimination context is entitled to preclusive effect in a
subsequent Title VII suit where that decision has been reviewed
and affirmed by the state courts." *Bagenstose v. Dist. of
Columbia*, 503 F. Supp. 2d 247, 260 (D.D.C. 2007) (citing *Kremer*,
456 U.S. at 479-80); *see also University of Tenn. V. Elliot*, 478
U.S. 788, 799 ("[W]hen a state agency acting in a judicial

capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.") (internal quotation marks omitted).

Collateral estoppel applies when: "(1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Modiri v. 1342 Rest. Group, Inc.*, 904 A.2d 391, 394 (D.C. 2006) (quoting *Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995)). When applicable, collateral estoppel renders conclusive the determination of issues of fact or law that have been previously decided. *Franco*, 3 A.3d at 304.

## III. DISCUSSION

### A. The Issue Decided

For collateral estoppel to apply, "the previously resolved issue must be identical to the one presented in the current litigation; similarity between the issues is insufficient." *Dist. of Columbia v. Gould*, 852 A.2d 50, 56 (D.C. 2004) (citing *Hutchinson v. Dist. of Columbia Office of Employee Appeals*, 710 A.2d 227, 236 (D.C. 1998). The District argues that the OEA

determined that "Jahr did not establish that any similarly-situated employee was treated differently;" therefore, Mr. Jahr is barred from relitigation in this court. Opp'n at 3 (quoting *Jahr III,* 19 A.3d at 341). Mr. Jahr, however, suggests that "the issue of race discrimination was not directly at issue in [his] claims before the OEA," because "issues of disparate treatment were considered only because it was relevant to the appropriateness of the proposed penalty." Reply at 3. The Court does not agree. The precise issue resolved in the OEA proceeding was whether Mr. Jahr was treated differently in his termination than other similarly situated employees, which is identical to the Title VII claim Mr. Jahr has moved to reinstate in this court. That it was decided in the context of whether the penalty was appropriate does not defeat its preclusive effect.

In upholding Mr. Jahr's termination by the Department, the OEA Administrative Law Judge ("ALJ") addressed two major questions: (1) "[w]hether the [Department] action was taken for cause;" and (2) "[w]hether [Mr. Jahr's] penalty was appropriate under the circumstances." *Jahr I*, OEA Matter 1601-0180-99 at 3. When a charge is upheld, the OEA will not disturb the penalty if it "is within the range allowed by law, regulation, or guidelines and is clearly not an error of judgment." *Id.* at 12. (internal quotation marks omitted). The ALJ determined that Mr.

Jahr's penalty was within the range allowed by the Table of
Appropriate Penalties, and that it was clearly not an error of
judgment. *Id.* at 12-13. After finding that Mr. Jahr's
termination was for cause, the ALJ also considered what are
known as the *Douglas* factors, which the OEA has adopted as
factors to be considered by an agency in its determination of an
appropriate penalty. *Id.* (citing *Douglas v. Veterans Admin.*, 5
M.S.P.R. 280, 305-306 (M.S.P.B. Apr. 10, 1981).

In *Douglas,* the Merit Systems Protection Board recognized
twelve factors "generally recognized as relevant" in determining
the appropriateness of a penalty. Those factors include, *inter
alia*: (1) the employee's job level and type of employment; (2)
the employee's past disciplinary record; (3) the employee's past
work record; and (4) the consistency of the penalty with those
imposed upon other employees for the same or similar offenses.
*Douglas,* 5 M.S.P.R. at 305-306.

Because Mr. Jahr claimed "that he was not treated the same
as other individuals in the Department," the ALJ gave special
attention to one of the *Douglas* factors – whether there is
"consistency of the penalty with those imposed upon other
employees for the same or similar offenses." *Jahr I*, OEA Matter
1601-0180-99 at 13; *see Douglas*, 5 M.S.P.R. at 305. To show
disparate treatment, "the employee must show that he or she
worked in the same organizational unit as the comparison

employees and that they were subject to discipline by the same supervisor within the same general time period." *Id.* (citing *Carrol v. Department of Health and Human Services*, 703 F.2d 1388, 1389 (Fed. Cir. 1983) (finding that an employee failed to show she was treated disparately because she only proffered evidence of comparison employees who worked in different organizational units and were disciplined by different supervisors)). Upon consideration of the evidence submitted by Mr. Jahr, the ALJ concluded that he had failed to show disparate treatment because the comparison employees did not work under the same supervisor or in the same department as Mr. Jahr. *Id.* at 13-14.

On appeal from the ALJ's initial decision, the full board of the OEA reviewed the decision and affirmed the ALJ's determination that Mr. Jahr had failed to show disparate treatment. *Jahr v. D.C. Fire and Emergency Medical Services*, OEA Matter No. 1601-0180-99 (February 27, 2007) ("*Jahr II*"). In reviewing this determination, the Board noted that Mr. Jahr had "failed to meet his burden of proof in establishing a prima facie case," because he "did not show that he was treated differently than those similarly situated," and because "[n]one of the comparison employees to which [Mr. Jahr] attempts to liken himself[] had a previous disciplinary action against them," or "were under the same supervisor." *Id.* at 9-10.

In upholding the OEA's decision, the D.C. Superior Court also considered whether Mr. Jahr was subject to disparate treatment. *Jahr v. Dist. of Columbia*, No. 2007 CA 2215P, 2009 WL 8153670 (D.C. Super. April 9, 2009) ("*Jahr III*"). The court concluded, like the ALJ and the OEA board, that Mr. Jahr had failed to show disparate treatment. *Id.* at 4 (citing *O'Donnell v. Associated Gen. Contractors of Am., Inc.* 645 A.2d 1084, 1088-89 (D.C. 1994) (concluding that a female employee failed to establish a prima facie case of disparate treatment on the basis of sex pursuant to Title VII because she did not proffer evidence of similarly situated male employees treated differently in the manner of their termination). In fact, the court found that like other employees who had been terminated for similar behavior, Mr. Jahr had a history of deceptive and dishonest behavior within the agency. *Id.* With respect to employees that Mr. Jahr claimed were subject to less severe penalties, the court found they were not similarly situated because Mr. Jahr did not establish that they worked under the same supervisor. *Id.* The D.C. Court of Appeals affirmed the Superior Court's decision, holding that Mr. Jahr failed to "establish that any similarly-situated employee was treated differently.[2] *Jahr*, 19 A.3d at 341 (citing *Hutchinson*, 710 A.2d

---

[2] Different courts use differing standards to determine whether comparison employees are "similarly situated." In this Court,

12

227 (holding that an employee failed to show disparate treatment in his termination from D.C. Fire Department, because he failed to identify employees with similar disciplinary backgrounds who had been treated differently)).

The OEA, the OEA Board, the D.C. Superior Court, and the Court of Appeals all decided a common issue: whether Mr. Jahr was treated differently than other similarly situated employees, i.e. whether he was subject to disparate treatment. Mr. Jahr is therefore precluded from raising that issue again in federal court. Once an issue is raised and determined, the entire issue is precluded, not just particular arguments raised in support of it. *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254, 258-59 (D.C. Cir. 1992) ("If a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was

---

in order to establish that comparison employees are similarly situated, one must show that "all of the relevant aspects of [the employee's] employment situation were nearly identical" to the comparison employees. *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995). The District of Columbia Court of Appeals uses the same standard, and cites *Neuren* as the controlling case on the issue. *See Hollins v. Fed. Nat. Mortgage Ass'n*, 760 A.2d 563, 578 (D.C. 2000) (citing *Neuren*, 43 F.3d at 1514)). Therefore, the issue of whether Mr. Jahr was similarly situated, as it was analyzed by both the D.C. Court of Appeals and this Court, is the same.

not in fact expressly pleaded or otherwise urged.") (emphasis in original); *Rodriguez v. Shulman*, 844 F. Supp. 2d 1, 9-10 (D.D.C. 2012) (finding that new legal theories raised in second proceeding were so related to previously litigated questions that they did not constitute distinct issues). That Mr. Jahr's arguments may differ somewhat from those previously presented does not allow him a second (or perhaps more accurately, fifth) bite at the apple. Mr. Jahr is not only precluded from arguing that he was treated differently from other similarly situated employees generally, but also that he was treated differently from other similarly situated African American employees because of his race – an argument he was free to raise in his OEA proceedings. *See Securities Indus. Ass'n v. Board of Governors*, 900 F.2d 360, 364-65 ("Whether petitioner actually argued [a particular position in a prior proceeding] is irrelevant, however, since preclusion because of a prior adjudication results from resolution of a question *in issue*, not from the litigation of specific *arguments* directed to the issue.") (emphasis in original); *Bagenstose*, 503 F. Supp. 2d at 260 (finding that a D.C. Court of Appeals affirmance of an OEA finding that a former teacher had voluntarily retired, and was thus never discharged, precluding the bringing of Title VII discrimination claims that arose from the teacher's loss of his teaching position in federal court).

## B. Actually Litigated

To have preclusive effect in a subsequent proceeding, an issue must have been "actually litigated" in the first proceeding, *Modiri*, 904 A.2d at 394, meaning that it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined," *Ali Baba Co. v. WILCO, Inc*., 482 A.2d 418, 422 (D.C. 1984) (citing Restatement (Second) of Judgments § 27(d) (1982)). Because the issue of whether Mr. Jahr was subject to disparate treatment was "actually litigated," he is barred from raising it again here.

During his OEA appeal, Mr. Jahr properly raised the issue of disparate treatment and submitted it for determination by presenting evidence of purported disparate treatment, which was then considered by each reviewing court. *See Jahr I*, OEA Matter No. 1601-0180-99 at 13 n.26; *Jahr III*, 2009 WL 8153670 at * 4; *Jahr*, 19 A.3d at 340-41. Mr. Jahr submitted three sets of documentation as evidence of disparate treatment in his termination during his OEA proceeding: (i) documentation of actions taken against two employees for inexcusable neglect of duty; (ii) information provided to the Equal Employment Opportunity Commission regarding three Department employees terminated between 1995 and 1999; and (iii) a letter from opposing counsel responding to a discovery request related to Mr.

Aronson. *Jahr I*, OEA Matter No. 1601-0180-99 at 13-14. The ALJ

found the evidence lacking because

> it was provided for a different purpose in another forum,
> the time period was too broad to be relevant in this matter,
> [and] the proposed penalty and final disposition
> information did not identify organizational units or
> supervisors. . . .

*Id.* The ALJ thus concluded that Mr. Jahr had failed to show

that he had been treated differently than similarly situated

employees. *Id.* Therefore, the issue of disparate treatment was

"actually litigated," because it was properly raised, submitted

for determination, and then determined. *See also Borger Mgmt.,*

*Inc. v. Sindram*, 886 A.2d 52, 63 (D.C. 2005) (finding that the

issue of the legality of a landlord's termination of a tenant's

contract was properly raised by the tenant as a defense to the

landlord's action for possession in an administrative action and

therefore could not be raised in a subsequent action); *Pipher v.*

*Odell*, 672 A.2d 1092, 1095 (D.C. 1996) (holding that the issue

of proper notice of sale was "actually litigated," because it

was properly raised in earlier litigation by the filing of a

complaint alleging improper notice, and that the prior court's

grant of summary judgment, which noted that proper notice had

been given, served as a determination of the issue); *Davis*, 663

A.2d at 501 (finding that the issue of blood testing was

"actually litigated" for the purposes of collateral estoppel

because it had been raised in a motion for a blood test and

again in a Rule 60(b) motion to vacate denial of that motion);
*Ali Baba Co.*, 482 A.2d at 425-26 (finding that multiple defenses
were "actually litigated," because they were properly raised by
the defendant in a prior tenant action for possession in his
answer and plea of title, and that the lower court's summary
judgment ruling addressing the defenses served as a
determination of them).

### C. "Determined" or "Decided" by a Valid Final Judgment on the Merits

"[C]ollateral estoppel treats as final only those questions
actually and necessarily decided in a prior suit." *Brown v.
Felsen*, 442 U.S. 127, 139 n.10 (1979). Here, the issue of
disparate treatment was necessarily decided in Mr. Jahr's OEA
proceeding and subsequent appeals. After considering the three
sets of documentation Mr. Jahr submitted to support the argument
that he was treated disparately, the ALJ found that, "[b]ased on
the totality of the circumstances . . . [Mr. Jahr] has failed to
show he was treated unfairly." *Jahr I*, OEA Matter No. 1601-
0180-99 at 14. Accordingly, the issue was "decided" or
"determined" in the OEA proceeding. *See Bagenstose*, 503 F. Supp.
2d at 260 (holding that OEA's finding, and the D.C. Court of
Appeals' subsequent affirmance of that finding, that plaintiff
voluntarily retired in 1996, and was thus never discharged, was

an issue "decided" by the OEA and entitled to preclusive effect in the district court proceeding).

### D. Full and Fair Opportunity

Collateral estoppel only applies if there was a full and fair opportunity for litigation by the parties or their privies. *Davis*, 663 A.2d at 501. In *Oubre v. Dist. of Columbia,* the D.C. Court of Appeals found that the parties had "an adequate opportunity to litigate" for purposes of issue preclusion, because there had been an evidentiary hearing at the agency level in which "the parties were given an opportunity to make opening and closing statements, to call witnesses, to cross-examine witnesses, and to introduce exhibits." 630 A.2d 699, 703 (D.C. 1993).

Likewise, the Court finds that Mr. Jahr had a full and fair opportunity to litigate disparate treatment. He was able to introduce evidence on the issue, present his claims at a hearing before the Administrative Law Judge, and appeal his decision to the full board of the OEA, the D.C. Superior Court, and the Court of Appeals. *See Youngin's Auto Body*, 775 F. Supp. 2d at 8-9 (finding that the plaintiff had full and fair opportunity to litigate, because he was granted a full evidentiary hearing before an ALJ, representation by counsel, an opportunity to present evidence and cross-examine witnesses, and because the ALJ's decision was affirmed by the D.C. Court of Appeals).

### E.    Essential to the Judgment

"Collateral estoppel . . . precludes the relitigation of specific facts or issues . . . when those issues are essential to the case." *Short v. Dist. of Columbia Dep't of Employment Servs.*, 723 A.2d 845, 849 (D.C. 1998).  In assessing whether a decision was essential to a judgment, the question is whether the issue was "actually recognized by the parties as important and by the trier as necessary to the first judgment." *Synanon Church v. United States*, 820 F.2d 421, 427 (D.C. Cir. 1987) (internal citation omitted).

Mr. Jahr argues that the issue of disparate treatment was "not essential to the judgment in the OEA decision."  Reply at 3. The Court disagrees.  The issue of disparate treatment was essential the OEA's holding that "managerial discretion was legitimately invoked and properly exercised," and that, "[the Department's] action was supported by the preponderance of evidence, consistent with law and applicable regulations." *Jahr I*, OEA Matter No. 1601-0180-99 at 14.  As explained above, the ALJ found that Mr. Jahr was not subject to disparate treatment. A contrary conclusion would have resulted in a conclusion that Mr. Jahr's termination was "not in accordance with the law or applicable regulations." *See, e.g. Aronson v. D.C. Fire and Emergency Medical Services Department*, OEA Matter No. 1601-0128-99, 7-8 (January 26, 2007) (holding that Mr. Aronson's

termination should be reduced to a sixty-day suspension, because
his penalty was different from other similarly situated
employees, and therefore inappropriate); *O'Boyle v. D.C.
Metropolitan Police Department*, OEA Matter 1601-0020-05R09
(January 27, 2010) (reversing an employee's termination, because
other similarly situated employees only received the equivalent
of a twenty-day suspension). Because the ALJ instead concluded
that Mr. Jahr's termination was lawful, the finding regarding
disparate treatment was essential to the judgment. *See Borger
Mgmt., Inc.*, 886 A.2d at 63 (finding that a prior determination
that a landlord's termination of contract was legal was
essential to the judgment because it was necessary to conclude
that the termination was not retaliatory); see also *Synanon
Church*, 820 F.2d at 427 (finding that determination that a party
participated in willful destruction of evidence was essential to
a prior holding that the party had committed fraud on the court
because, had the party not willfully destroyed evidence, it
would not have needed to make the misrepresentations it did).

IV.  **CONCLUSION**

Mr. Jahr cannot proceed on his Title VII disparate
treatment claim because he is precluded from relitigating the
issue of whether he was treated differently than similarly
situated employees in his termination. Because Mr. Jahr is
required to show disparate treatment in order to succeed on his

Title VII claim, the determination on that issue by the OEA and the District of Columbia courts are insuperable obstacles to the reinstatement of his claim in this court. *See Bagenstone*, 503 F. Supp. 2d at 560 (holding that plaintiff's Title VII claim could not proceed because the issue of whether he was discharged had had already been decided against him in previous actions in the District of Columbia courts that were given preclusive effect in his federal action). Therefore, the Court **DENIES** Mr. Jahr's Motion to Reinstate. An appropriate order accompanies this memorandum opinion.

      **SO ORDERED.**

**SIGNED:**     **Emmet G. Sullivan**
                  **United States District Court Judge**
                  **September 16, 2013**